IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Office of Courts Administration, et al.,
    Plaintiffs,

v.

**CIVIL NO. 03-1772 (JAG)**

AA Public Finance, et al.
    Defendants.

## REPORT AND RECOMMENDATION

This interpleader action was commenced by the Office of Court Administration of the General Court of Justice for the Commonwealth of Puerto Rico ("hereinafter "OAT" for its Spanish acronym) against defendants Lehigh Municipal Leasing ("Lehigh"), Strong Capital Management ("Strong"), Wilmington Trust Company ("Wilmington"), CMI Capital Market Investment ("CMI"), and AA Public Finance ("AA Public"). There are several matters before the court, including[1]: 1) a joint motion for summary judgment submitted by Lehigh and Strong, 2) a joint motion for summary judgment submitted by Wilmington and CMI, and 3) two motions *in limine* submitted by Wilmington and CMI regarding Lehigh and Strong's proffered evidence in support of their motion for summary judgment. After thoroughly reviewing the pleadings and exhibits, the court **RECOMMENDS** that Lehigh and Strong's motion be **DENIED** (Docket No. 102) and that Wilmington and CMI's motion be **DENIED** (Docket No. 109). The court further **DENIES** the two motions *in limine* (Docket Nos. 141 & 142).

**I.    Summary Judgment Standard**[2]

Summary judgment is appropriate when "the pleadings, depositions, answers to

---

[1] OAT has also submitted a motion for summary judgment (Docket No. 115) which is ruled upon in a separate report and recommendation.

[2] The court notes that all parties have fully and thoroughly complied with Local Rule 56.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56( c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In order to defeat summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." See Fed. R. Civ. P. 56(e). The court must view the record and all reasonable inferences in the light most favorable to the party opposing summary judgment. See id. If the court finds that some genuine factual issue remains, whose resolution could affect the outcome of the case, the court must deny the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 284 (1986).

Summary judgment is appropriate in the absence of a genuine issue of material fact, when the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P 56(c). Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts deriving from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact. See Fed.R.Civ.P. 56(c) and (e).

However, this standard is not affected by the presence of cross motions for summary judgment, nor warrant the granting of summary judgment *per se*. Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996); Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996). Cross motions simply require the court to determine whether either party deserves judgment as a matter of law on facts that are not disputed. Id. All factual disputes and any competing, rational inferences are resolved in the light most favorable to the party against the non moving party. Id.

**II.   Procedural History**

On July 15, 2003, OAT filed this interpleader action against the parties citing confusion as to the rightful owner of lease payments for software equipment. (See Docket No. 1.) OAT deposited the disputed payment with the Clerk of Court. (Id.)   On August 13, 2003, OAT filed an amended complaint. (See Docket No. 3.) Wilmington and CMI answered the Amended Complaint and filed a counterclaim against OAT for, *inter alia*, breach of contract and wrongful deposit. (See Docket Nos. 6 & 7.) Wilmington and CMI also filed a cross claim against Lehigh and Strong. (See Docket No. 8.) On October 29, 2003, OAT answered Wilmington and CMI's counterclaim. (See Docket No. 11.) On November 21, 2003, Lehigh and Strong filed their answer to Wilmington and CMI's

**Civil No. 03-1772 (JAG)**                3

cross claim and asserted their own cross claim. (See Docket No. 13.) On that same day, Lehigh and Strong filed their answer to the Amended Complaint, as well as, their counterclaims against OAT. (See Docket No. 14.) On December 10, 2003, OAT answered Lehigh and Strong's counterclaim. (See Docket No. 16.) On January 12, 2004, Wilmington and CMI answered Lehigh and Strong's counterclaim. (See Docket No. 20.) On February 17, 2004, Lehigh and Strong filed their cross claim against AA Public Finance. (See Docket No. 23.) OAT subsequently deposited the final payment under the lease with the court. (See Docket No. 57.)

On July 22, 2005, Lehigh and Strong filed a joint motion for summary judgment, with accompanying statement of material facts. (See Docket Nos. 102, 105.) Wilmington and CMI opposed the motion and submitted a statement of contested facts. (See Docket Nos. 143, 156.) Lehigh/Strong filed a reply to Wilmington/CMI's opposition (See Docket No. 184.) On July 29, Wilmington/CMI filed its own motion for summary judgment, accompanied by a statement of material facts and exhibits. (See Docket Nos. 109, 110.) Lehigh/Strong opposed the motion and submitted a statement of contested facts, with accompanying exhibits. (See Docket Nos. 145-146, 154.) OAT also filed a brief opposition to Lehigh/Strong's and Wilmington/CMI's statement of material facts. (See Docket No. 171.)

**III.   Relevant Factual Background**

The months of discovery in the present case have provided a substantial record that make it clear to the court that summary judgment is not appropriate for either Lehigh/Strong or Wilmington/CMI. The material facts are so strongly disputed that they raise genuine issues for trial and the court cannot grant summary judgment as a matter of law. The following facts are undisputed except where stated.

   *A.   The OAT Lease*

In 1998, OAT began the planning and implementation of the ANSFI project. (See Docket No. 105, ¶ 6). The project was intended to upgrade OAT's fiscal computer systems to comply with the "Y2K" phenomenon and beyond. (Id.) In December 1998, OAT executed a Government Lease Purchase and Option Agreement ("the OAT lease") for the lease of fiscal software, in order to help carry out the first phase of the ANSFI project. (Id. at ¶¶ 1, 5.) AA Public was chosen to provide

**Civil No. 03-1772 (JAG)**                                    4

financing for the project.  (Id. at ¶ 7.)

The original parties to the lease were AA Public, as "lessor," and OAT, as "lessee."  (Id. at ¶ 2.)  The lease was signed by OAT representative Rafael Cruz Garay ("Cruz") and AA Public President Alvin Aguirre ("Aguirre").  (Id. at ¶¶ 3- 4.)  The lease contract, totaling $3,056,577.00, was set at a yearly interest rate of 6.75% and provided for repayment to begin on July 15, 2000 and continue in five (5) consecutive installments through July 15, 2004.  (Id. at ¶¶ 5, 9-10, 12.)  Payment for the first four (4) years (2000 through 2003) were for the stipulated amount of $771,449.12.  (Id. at ¶ 10.)  The last installment was stipulated at a lesser amount of $771,438.98.  (Id. at ¶ 11.)

The lease contract was given two distinct identifiers: AF99-198 – given by OAT and MPR-980183 – given by AA Public.  (See Docket No. 143, ¶ 14.)  The original lease retained by OAT and registered in the Comptroller's Office contains both identifiers.  (Id.; see also Docket No. 105, ¶ 14.)  Aware that AA Public customarily assigned leases to third-party assignees, OAT and AA Public signed more than one original lease in December 1998.  (See Docket No. 105, ¶¶ 17-18, 23.)  One copy was kept by OAT and at least one other copy was given to Aguirre for subsequent negotiation with investors and assignees.  (Id. at ¶ 19.)  The exact number of signed copies is in dispute.

The lease specifically provided for assignment of title, rights and interests of the lease or equipment to any third party by AA Public, as the lessor.  (Id. at ¶ 22.)  All of the lessor's rights and interests would be transferred to any third party assignee.  (Id. at ¶ 24.)  OAT designated AA Public as its agent.  (Id. at ¶ 25.)  AA Public was to maintain a book entry system for the purposes of identifying the ownership of or interest in the lease.  (Id.)

It is undisputed and records from the Puerto Rico State Department show that on January 22, 2002, AA Public underwent a corporate fusion on and merged with Cross Border Leasing ("Cross").  (Id. at ¶ 39.)  The subsisting or surviving company was Cross and not AA Public.  (Id.)

### B.    *Assignment of the Lease & Notice of Assignment*

The assignment of the lease is where the central dispute lies.  Both Lehigh/Strong and Wilmington/CMI have differing views of when and which lease was assigned.  Similarly, both parties have differing views as to who gave notice of assignment first.  The following facts are heavily disputed and are detailed according the assertions of each party.

**Civil No. 03-1772 (JAG)**                     5

### 1. OAT's assertions

According to OAT, in January 2002, OAT received communication that the lease had been assigned to Morgan Guarantee Trust. (See Docket No. 3, ¶ 3.) After several communications requesting clarification of the assignment and the terms of the lease, OAT received a communication from AA Public indicating that the lease had been transferred back to AA Public. (Id.) Payment was made accordingly. (Id.) On June 23, 2003, OAT received a letter from CMI indicating that the lease had been assigned to Wilmington on December 3, 2002. (Id. at ¶ 5.) On June 26, 2003, OAT received a notice for redirection of payments from Lehigh. (Id. at ¶ 4.) The notice indicated that the lease had been assigned to Lehigh on February 10, 1999. (Id.)

### 2. Lehigh and Strong's Assertions

According to Lehigh/Strong, in February 1999, AA Public assigned the lease to Strong through two intermediary companies. (See Docket No. 105, ¶¶ 26-27.) First, Lehigh and its president, Robert Kalb ("Kalb") were assigned the lease through a written agreement titled "Assignment of Lease." (Id. at ¶ 28.) A few days later, Lehigh in turn assigned the lease to another (now defunct) company, Southwick Investments ("Southwick"), who acting as an agent for Strong, assigned the lease to Strong. (Id. at ¶ 29.)

After receiving the assignment, Southwick, still acting as agent for Strong, asked Lehigh to notify OAT in writing of the assignment and to demand that payments be redirected to Strong thereafter. (Id. at ¶ 32.) On June 12, 2000, Kalb sent a letter to OAT for redirection of payment and instructed the agency to reroute its payment to Strong. (Id.) AA Public was told to notify OAT, as well, of the assignment to Strong. (Id. at ¶ 33.) Wilmington/CMI strongly dispute that Kalb ever sent a letter to OAT for redirection of payments. (See Docket No. 143, ¶ 32.) Wilmington/CMI cite lack of supporting documentation like the notice or bills sent to OAT by Lehigh/Strong. (Id.)

Lehigh/Strong assert that in April 2003, it sent an additional written notice regarding direction of payments, via fax, to OAT. (See Docket No. 105, ¶ 36.) Additionally, on June 12, 2003, Kalb made a telephone call to OAT to instruct and remind OAT to send the payments to Strong. (Id. at ¶ 37.) Kalb also sent a 27-page fax to a court employee named Juan Ruiz, requesting that payments on the lease be sent to Strong. (Id.)

**Civil No. 03-1772 (JAG)**                                              6

Wilmington/CMI assert that Juan Ruiz is not an OAT employee but the Executive Regional Director of the San Juan Judicial Center. (See Docket No. 143, ¶ 37; see also Docket No. 110, ¶ 18.) Wilmington/CMI assert, through Mr. Ruiz' testimony, that he in fact was not the person who was concerned with this matter. (See Docket No. 143, ¶ 37.) Mr. Ruiz testified that he understood that Kalb was "confused" about whom he had to address. (Id.) Mr. Ruiz also testified that he explained to Mr. Kalb that he worked in the judicial center and not with the court's administration. (Id.) According to Wilmington/CMI, Lehigh/Strong first transmitted a "Notice of Redirection of Payment from Assignee" on June 12, 2003 to Mr. Ruiz. On June 13, 2003, Mr. Ruiz sent the written request and notice to OAT's Deputy Administrative Director through internal mail. (See Docket No. 110, ¶ 19.) On June 26, 2003, Lehigh sent Mr. Ruiz a follow up letter via fax. (Id.) Mr. Ruiz forwarded the fax to OAT. (Id.)

From the year 2000 to 2002, Strong received the first three (3) payments on the lease. (See Docket No. 105, ¶ 34.) OAT sent the payments to AA Public, who in turn wired them directly to Strong. (Id. at ¶ 35.) Wilmington/CMI dispute this purported fact citing that there is no supporting documentation linking the payments to the wire transfers. (See Docket No. 143, ¶ 34.) Strong assumed AA Public had carried out its notifying duties when Strong received the first three lease payments. (See Docket No. 105, ¶ 75.) Additionally, Lehigh and Strong had purchased other Puerto Rico leases from AA Public without incident. (Id.) Having received the assignment, Strong deposited the lease in an account known as "Strong Mutual Advantage Fund." (Id. at ¶ 30.) The fund's current custodian is State Street Bank & Trust Company. (Id.)

**3.      Wilmington and CMI's Assertions**

According to Wilmington/CMI, on August 1, 2002, CMI paid Aguirre approximately $1.5 million to purchase a lease with the same identifiers as the OAT lease. (Id. at ¶ 40.) On that day, AA Public assigned the lease to CMI, who in turn assigned the lease to Robert Frasco's Children's Trust ("Frasco"). (See Docket No. 110, ¶¶ 8, 9.) On December 3, 2002, CMI reacquired the lease from Frasco. (See Docket No. 143, ¶ 46.) On that same day, December 3, 2002, Wilmington acquired the lease from CMI. (See Docket No. 110, ¶10.) Notwithstanding that Wilmington acquired the lease from CMI, CMI also received the lease with a least eighteen (18) other leases from Cross

**Civil No. 03-1772 (JAG)**                                    7

through a document titled "Master Agreement of Lease" dated December 3, 2002 and signed by Aguirre, CMI employee Carl Sailing and CMI shareholder Lee Hayes. (See Docket No. 105, ¶ 47.)

Lehigh/Strong dispute Wilmington/CMI's assertion that Wilmington was assigned the lease. Lehigh/Strong assert that no agreement of assignment or other documentation has been produced which reflects or establishes an assignment of the lease to Wilmington by any assignor. (Id. at ¶ 58.) Wilmington/CMI strongly dispute this claim and point to Frasco's letter of intent and a document sent to CMI regarding the vetting of the lease. (See Docket No. 143, ¶ 58.)

According to Wilmington/CMI, the assignment of the lease to Wilmington was notified to OAT by AA Public on March 25, 2003. (See Docket No. 110, ¶ 11.) According to testimony provided by Angel Vallellanes, Director of Finance for OAT, acknowledgment of assignment was received by his office on March 25, 2003. (Id.) The acknowledgment of assignment was in writing, disclosed the name of the assignee and disclosed the address where payments should be made. (Id.) On or about April 10, 2003, OAT informed AA Public that it was returning the "Acknowledgment of Assignment" to Wilmington because it had not been signed by a Wilmington representative and had Cross as assignor, instead of AA Public. (Id. at ¶ 12.) Wilmington/CMI dispute this fact. Wilmington/CMI assert that while a signature was not present on the document, it was not needed given that the lease specifically stated that is was sufficient to disclose the name of the assignee and the address where the subsequent payments should be sent. (See Docket No. 143, ¶ 59.)

On June 12, 2003, Debora Posado, CMI's office manager, called OAT and spoke to Mr. Roberto Frontanes in order to confirm that the payment which was due in July 2003 would be made on behalf of Wilmington. (See Docket No. 110, ¶ 13.) On that day, Ms. Posado drafted and transmitted to OAT, via fax, a letter confirming her conversation with Mr. Frontanes. (Id.) According to Mr. Vallellanes' testimony, the June 12th letter was subsequently taken to OAT's Administrative Director in preparation of litigation. (Id.)

On June 19, 2002, Ms. Posado called OAT to inquire about the letter and spoke with Mr. Vallellanes. (Id. at ¶ 14.) Mr. Vallellanes requested, at that time, that Ms. Posado send him the "Acknowledgment of Assignment" executed by Wilmington. (Id.) Ms. Posado complied. (Id.) On June 23, 2003, Ms. Posado received, via fax, a note addressed to her from Mr. Vallellanes stating

that OAT would make the necessary changes so that payment could be made to Wilmington. (Id. at ¶ 15.) On that day, June 23, 2003, Ms. Posado drafted and transmitted, via fax, a letter invoicing the July 2003 payment under the lease. (Id. at ¶ 16.) According to Mr. Vallellanes' testimony, he did not understand that the document was an invoice, rather notice of submission of a future invoice. (Id.) On July 7, 2003, Ms. Posado spoke with Mr. Vallellanes regarding the invoice and payment. (Id. at ¶ 17.) At that time, Mr. Vallellanes relayed to Ms. Posado that OAT has received conflicting claims for payment and that the matter bad been referred for legal resolution. (Id.) Lehigh/Strong make very strong objections to Wilmington/CMI's assertions regarding Ms. Posado. (See Docket No. 146, ¶¶ 13-16.) Specifically, Lehigh/Strong cites Wilmington/CMI's use of an unsworn, unsigned, and undated statement to support these purported facts. (Id.) According to Lehigh/Strong, OAT never issued or authorized any payment to Wilmington or CMI, and never acknowledged them as payees on the lease. (See Docket No. 105, ¶ 74.)

  **C.**  *The Leases – the Actual Documents*

  Finally, there are several disputes as to the authenticity of the documents themselves. The following facts are again strongly disputed.

  **1.**  **Lehigh and Strong's Lease**

  It is undisputed that both Lehigh/Strong's lease and Wilmington/CMI's lease were independently and separately signed by Cruz and Aguirre, and separately notarized. (Id. at ¶ 70.) However, according to Lehigh/Strong, the terms of the lease assigned to them by AA Public are identical to the terms expressed in the OAT lease, including the total amount of the lease, the payment schedule, and the interest rate. (Id. at ¶ 38.) According to the expert witness, Evaristo Alvarez, Lehigh/Strong's lease is a "much more accurate, trustworthy and reliable version of the original lease" because it has identical business terms as the OAT lease. (Id. at ¶ 68.)

  According to Lehigh/Strong, when Kalb purchased the lease in February 1999, he received original lease documentation, which he sent to Southwick. (Id. at ¶ 71.) As part of his due diligence in acquiring and assigning the lease, Kalb personally analyzed, prepared and provided the payment schedule which was approved and executed by OAT in December 1998. (Id. at ¶ 72.) Kalb also personally filed the IRS form 3038G for the lease. (Id. at ¶ 73.)

Wilmington/CMI asserts that Lehigh/Strong's copy of the lease cannot be authenticated because it is a photocopy. (See Docket No. 110, ¶ 4.) As noted by Wilmington/CMI, however, Mr. Alvarez was unable to perform in laboratory inspections on Lehigh/Strong's document because it was a photocopy. (Id.) Lehigh/Strong asserts that its photocopy only affected Mr. Alvarez's ability to opine conclusively on whether Lehigh/Strong's lease contained any alterations. (See Docket No. 146, Additional Facts, ¶ 3.) The fact that the Lehigh/Strong's document is a photocopy did not affect Mr. Alvarez's conclusion that it is more similar to OAT's lease than Wilmington/CMI's, which contained fraudulent alterations. (Id.)

Finally, Wilmington/CMI assert that Lehigh/Strong's copy of the lease has been altered in that it contains a different AA Public Identifier. (See Docket No. 143, ¶ 27). The lease in Lehigh/Strong's possession contains the identifier MPR-980183A, whereas the OAT lease is MPR-980183. (Id.)

### 2. **Wilmington and CMI's Lease**

Wilmington/CMI assert that their lease contains the same AA Public identifier as the OAT lease. (See Docket No. 105, ¶ 42.) Similarly, Wilmington/CMI assert that their lease contains original and unaltered signatures. (See Docket No. 143, ¶ 60.) According to Lehigh/Strong, however, Wilmington/CMI's lease is "less similar" to the OAT lease on several material points, including different interest rates, payment schedules, and amortization methods. (See Docket No. 105, ¶ 66.) Specifically, Wilmington/CMI's lease is different in that it contains a different and higher yearly interest rate of 8.29%, and it contains a different payment schedule, which included a final payment of $771,449.12 – instead of the payment listed on the OAT lease of $771,438.98. (Id. at ¶ 41.)

Wilmington/CMI conducted due diligence on the lease at least twice in 2002 – in August and December. (Id. at ¶ 48.) Wilmington/CMI assert that the law firm of Buchanan Ingersoll "vetted" and conducted due diligence for the lease in question, along with other leases that were to form part of the "Puerto Rico Tax-Free Trust." (See Docket No. 143, ¶ 48.) Wilmington/CMI assert that both Carl Saling, on behalf of CMI, and Frasco conducted their own due diligence on the lease. (Id.) Further, Wilmington/CMI assert that there was no failure to review the UCC filings given that these

were included in the vetting of the leases. (Id. at ¶ 49.) Wilmington/CMI assert that its lease and the "A-lease" have separate and independent UCC filings. (Id. at ¶ 49.) Thus, a UCC search conducted under the two identifiers would have revealed different results. (Id.)

However, according to Lehigh/Strong, the lease which CMI received in assignment in August 2002 was intentionally altered. (See Docket No. 105, ¶ 62.) Specifically, a white substance ("white-out") is visible on the document and could have been or should have been detected in the normal course of business and even by a lay person. (Id. at ¶ 64.) According to Lehigh/Strong, Wilmington/CMI failed to detect or express concerns about such alterations when they purchased the lease. (Id. at ¶ 65.)

Wilmington/CMI counter this assertion by noting that Mr. Alavarez admitted, that despite the fact that the original Rider 1 contained in Wilmington's lease had a different percentage, the original percentage lies underneath and is detectable. (See Docket No. 143, ¶ 41.) Wilmington/CMI assert that this makes the document an original. (Id.)

**IV.   Legal Analysis**

In support of their motion, Lehigh and Strong argue that they are entitled to summary judgment because: 1) Strong was the first assignee of the lease, 2) Strong's assignment is evidenced by a clear legal chain of successive bona fide assignments, and 3) Strong has taken assignment of the only unaltered version of the lease. Similarly, Wilmington and CMI argue that they are entitled to summary judgment because: 1) Lehigh and Strong claim rights to a different lease than the one in question, and 2) OAT received notice of the assignment of the lease from CMI before it received notice from Lehigh and Strong.

Thus, before the court are several issues, including: which party has a valid contract, and which party was legally assigned the contract? At this stage, it is not within the court's province to decide who has the valid contract and what was legally assigned, but rather whether there are disputes of material facts? If so, do these disputes create genuine issues for trial?

Finally, before the court are two motions *in limine* submitted by Wilmington/CMI seeking to strike several of Lehigh/Strong's documents and exhibits. The court first rules upon these evidentiary issues.

A.     ***Wilmington and CMI's Motions In Limine***

Wilmington/CMI challenge the inadmissability of Lehigh/Strong's copy of the lease, expert witness, and other documents proffered in support of their motion for summary judgment. The court denies the motion given that the evidence challenged goes directly toward a central issue in this case.

Most preliminary questions of fact in connection with applying Rules 1003 and 1004 of the Federal Rules of Evidence – concerning the admissibility of duplicates and other content evidence – are for the court to decide. See Fed.R.Evid 1003, 1004. However, in cases where applying the rule goes past mere administration and into the merits of the controversy, the question is not for the judge but for the jury. See Fed.R.Evid.1008.

In the present case, Wilmington/CMI argue that Lehigh/Strong's use of a photocopy of a lease is inadmissible since it is not the best evidence. Wilmington/CMI argue that a duplicate cannot be admissible if there is a genuine issue as to the authenticity of the original. This is a correct analysis of the evidentiary rules, however, in cases involving questions whether the writing in question ever existed, the issue is for the trier of fact. Id. In this case, striking or deeming Lehigh/Strong's photocopy inadmissable would be tantamount to granting summary judgment for Wilmington/CMI. This is precisely why Rule 1008 was created so that the court would not go into the merits of the controversy. The court cannot go beyond its province. Thus, Wilmington/CMI's motion to strike Lehigh/Strong's lease is denied. (Docket No. 141.)

Wilmington/CMI also moves the court to strike the deposition of Robert Kalb as an expert witness and to strike two unauthenticated documents submitted by Lehigh/Strong. Wilmington/CMI argue that Kalb's testimony must be stricken given that he is not qualified as an expert witness and was not announced as an expert by Lehigh/Strong.

Wilmington/CMI correctly state the law pertaining to the admission of expert testimony. "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert...may testify..." Fed.R.Evid. 702. Under this rule, Lehigh/Strong would have to follow the requisites in order to qualify Kalb as an expert. However, Rule 702 is not the only way to admit Kalb's testimony. As Lehigh/Strong correctly state, Kalb need not testify as an expert in order to assist the trier of fact with the ins and

outs of municipal leasing. Instead, Kalb, President of Lehigh, can testify as a lay witness with an extensive amount of knowledge in this limited field. See Fed.R.Evid. 701. Under Rule 701, Kalb can testify as to his opinions and inferences rationally based on his perceptions in the field of municipal leasing. Therefore, Wilmington/CMI's motion to strike Kalb's deposition is denied.

Finally, Wilmington/CMI seek to strike Lehigh/Strong's Exhibit F and Exhibit Z – exhibits offered in support of their statement of material fact. See Docket No. 105. Exhibit F are copies of checks made out to AA Public by Oat. Exhibit Z is a copy of a letter sent by Lehigh to the IRS regarding receipt acknowledgment of the 8038-G document. Wilmington/CMI argue that these documents were not authenticated and therefore are inadmissible pursuant to Fed.R.Evid. 901. In opposition to the motion, Lehigh/Strong provide sworn statements by Kalb and Todd Kennedy, Vice President of State Street Bank & Trust authenticating the documents, and making Wilmington/CMI's request moot. Therefore, Wilmington/CMI's request to strike Exhibits F and Z of Docket No. 105 is also denied.

### B. *Lehigh and Strong's Motion for Summary Judgment*

Under Puerto Rico contract law, a contract must posses three essential elements to be valid: 1) consent of the contracting parties (meeting of the minds), 2) a definite object of the agreement, and 3) cause for obligation (consideration). See P.R. Laws Ann tit. 31, §§ 6451, 3391. In this case, Lehigh/Strong argue that they have a valid contract because: OAT was aware of AA Public's authority to assign the lease pursuant to Section15, OAT designated AA Public to be its agent for purposes of identifying the ownership or interest in and to the lease, AA Public assigned a document to Lehigh/Strong that contained the same contractual terms as the OAT Lease, and Lehigh/Strong's continuous chain of assignment and the fact that it received the first three (3) payments on the lease complete the essential elements needed under Puerto Rico Law.

By contrast, Lehigh/Strong argue that the lease in Wilmington/CMI's possession is not a true lease or binding contract. Instead, Lehigh/Strong argue that the Wilmington/CMI lease is an altered and inconsistent document that includes different interest rates, payment schedule and interest payments than the OAT lease. The lease that CMI acquired and negotiated with AA Public in August 2002 was critically altered by someone prior to assignment to Wilmington/CMI and thus was

**Civil No. 03-1772 (JAG)**                    13

no longer a valid, enforceable lease agreement. Further, Wilmington/CMI's lease has visible alterations, such as white out, which Wilmington/CMI should have been aware of, particularly during their due diligence. Instead, these alterations destroyed the validity and enforceability of this version of the lease.

In Puerto Rico, a holder of an instrument cannot acquire the status of holder in due course when it receives its transfer from a transferee that has engaged in fraud or illegality affecting the instrument. See PR Laws Ann. tit. 19, § 553 (b). Strong argues that AA Public made a fraudulent assignment of an altered government contract. Thus, Wilmington/CMI cannot be considered holders in due course and are not entitled to the final two payments under the lease. Instead, Lehigh/Strong assert that Wilmington/CMI's only remedy is against AA Public and no other. See PR Laws Ann. tit. 31, § 4429 ("When an agent acts in his own name, the principal shall have no action against the persons with whom the agent has contracted, nor the said persons against the principal.").

Lehigh/Strong also points the court to inconsistencies in Wilmington/CMI's chain of assignment as well. For instance, in August 2002, CMI assigned the lease to Frasco only to reacquire it in December 2002. At that point, CMI should have been the sole holder of the lease. Instead, the record shows that on that same date, Cross also made an assignment of the same lease to CMI as part of a package of eighteen (18) other leasing contracts. Wilmington/CMI should have been aware or made themselves aware of these irregularities, argues Strong. In order to have good faith, and pass muster, a holder must have engaged in ordinary care, which means "observance of reasonable commercial standards prevailing in the area in which the person is located, with respect to the business in which the persons is engaged." Id. at § 503(7).

Finally, Strong notes that although Wilmington/CMI has always alleged and claimed to be an assignee of the lease, there is no written agreement of assignment to Wilmington at any point. Therefore, the chain of assignment which supposedly entitles CMI or Wilmington to any contractual rights in this case is highly questionable.

In rebutting Lehigh/Strong's arguments, Wilmington/CMI attack the authenticity of Lehigh/Strong's lease. In doing so, however, Wilmington/CMI set out a clear dispute of a material fact – i.e. whether Lehigh/Strong's "A-lease" ever existed. Wilmington/CMI argue that

**Civil No. 03-1772 (JAG)**                          14

Lehigh/Strong ignore the entitlement law, based on notice of assignment, altogether. However, this is not necessarily improper. In fact, it is premature to delve into a notice of assignment analysis without first ascertaining threshold issues like who has the proper document? And whether the assignment process was correctly followed.

As has been thoroughly detailed in the factual background section above, Wilmington/CMI have satisfactorily raised triable issues. There is no doubt that Section 15 of the OAT lease allowed for assignment of the lease, nor that OAT designated AA Public to be its agent for purposes of identifying ownership and interest in the lease. There are, however, questions regarding the authenticity of Lehigh/Strong's lease. Specifically, given that the Strong can only proffer a photocopy, it makes it all that more difficult for the expert to test the document for alterations. At the summary judgment stage, the court cannot weigh evidence, only ascertain if there are clear disputes. In this regard, there is a clear dispute. Thus, for the foregoing reasons, the court recommends that Lehigh/Strong's motion for summary judgment be denied.

### C.    *Wilmington and CMI's Motion for Summary Judgment*

First, Wilmington/CMI begin their motion by arguing that only they are entitled to the final two payments on the lease because they are the only party claiming rights under lease number MPR980183. Lehigh/Strong are claiming rights under MPR980183A. The court finds this argument very unconvincing. As discussed above, there is an issue as to the authenticity of Lehigh/Strong's lease because it is a photocopy, but the same could be said for Wilmington/CMI's lease. The Wilmington/CMI lease has several alterations, including white out over the space where the interest rate was written on the OAT lease.

In its memorandum, Wilmington/CMI notes that its document has original pages and signatures. Wilmington/CMI admit that under the white out is the actual percentage of interest. Yet, instead of conceding that it has an altered document, Wilmington/CMI asks the court to treat the document as an original. The court finds this disingenuous given the clear alterations in the lease and irregardless of the lease's original signatures.

Second, Wilmington/CMI argue that it is entitled to the final two payments on the lease because it was the first to notify OAT of its assignment. Wilmington/CMI correctly states the law

**Civil No. 03-1772 (JAG)**                    15

on notice of assignment. In double assignment cases, the assignee that notifies the debtor first has constructive possession over the assigned credit and, thus, has priority to payment by the debtor. See PR Laws Ann. tit. 10 § 1741. The assignee who first notifies the debtor prevails. American Fire & Casualty Co. v. First National Bank of N.Y., 411 F.2d 755, 757-58 (1st Cir. 1969).

However, determining of proper notice of assignment is premature and may be moot by resolving the initial threshold question: who has the valid lease? Or even who has the valid assignment? With regards to this question, as discussed above, the record reflects a plethora of disputed facts. Assuming *arguendo*, however, there are still a number of disputes facts that raise a triable issue on who gave notice first making summary judgment inappropriate.

Lehigh/Strong assert that in April 2003, it sent a written notice regarding direction of payments, via fax, to OAT. Lehigh/Strong assert that Kalb made a telephone call to OAT to instruct and remind OAT to send the payments to Strong, as well as sent another fax to a court employee named Juan Ruiz, requesting redirection of payments. These facts are disputed by Wilmington/CMI, particularly because Wilmington/CMI contest that Kalb ever sent a letter to OAT for redirection of payments and cite a lack in supporting documentation. Similarly, Wilmington/CMI contend that Kalb was confused in who to deal with at OAT in order to effectuate notice and instead talked to an employee of the San Juan Judicial Center. Similarly, Wilmington/CMI asserts that it was first in giving OAT notice of its assignment as early as March 25, 2003, whereas Lehigh/Strong can only support an initial notice date of June 12, 2003. As notes above, Lehigh/Strong dispute this contention.

Finally, the court will not weigh evidence nor credit one witness' testimony more than another's. That is the function of a jury. Requesting that the court declare one document "better" or "more valid" over the other clearly goes against the court's province in a summary judgment motion. As to assignment, there is clearly a triable issue of fact present. For these reasons, the court recommends that Wilmington/CMI's motion for summary judgment be denied, as well.

**IV.    Conclusion**

Therefore, for the aforementioned reasons, the court **RECOMMENDS** that Lehigh and Strong's motion for summary judgment be **DENIED**. (Docket No. 102.) The court also

**Civil No. 03-1772 (JAG)**                16

**RECOMMENDS** that Wilmington and CMI's motion for summary judgment be **DENIED**. (Docket No. 109.)  Finally, the court **DENIES** both motions *in limine*.  (Docket No. 141 & 142.)

Under the provisions of 28 U.S.C. § 636(b)(1)(B) and (c) and Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection with the Clerk of Court within ten (10) days of being served with a copy thereof.  The written objections must specifically identify the portion of the report and recommendation to which objection is made and the basis for such objection.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111(1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

**SO RECOMMENDED**.

In San Juan, Puerto Rico this 6th day of March 2006.

*S/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States Magistrate-Judge