**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

Office of Courts Administration, et al.,
    Plaintiffs,

    v.                            **CIVIL No. 03-1772 (JAG)**

AA Public Finance, et al.,
    Defendants.

**REPORT AND RECOMMENDATION**

       This interpleader action was commenced by the Office of Court Administration of the General Court of Justice for the Commonwealth of Puerto Rico ("hereinafter "OAT" for its Spanish acronym) against defendants Lehigh Municipal Leasing ("Lehigh"), Strong Capital Management ("Strong"), Wilmington Trust Company ("Wilmington"), CMI Capital Market Investment ("CMI"), and AA Public Finance ("AA Public"). The matter before the court is a motion for partial summary judgment submitted by OAT. OAT requests that all of the counterclaims alleged against it by Wilmington/CMI and Lehigh/Strong be dismissed. After reviewing the law and the pleadings, the court **RECOMMENDS** that OAT's motion be **GRANTED**. (Docket No. 115)

**I.    Summary Judgment Standard**

       Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56( c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In order to defeat summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." See Fed. R. Civ. P. 56(e). The court must view the record and all reasonable inferences in the light most favorable to the party opposing summary judgment. See id. If the court finds that some genuine factual issue remains, whose resolution could affect the outcome of the case, the court must deny the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 284 (1986).

       Summary judgment is appropriate in the absence of a genuine issue of material fact, when

**Civil No. 03-1772 (JAG)**                           2

the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P 56(c). Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts deriving from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact. See Fed.R.Civ.P. 56(c) and (e).

## II.   Procedural Background and Relevant Factual Information

On July 15, 2003, OAT filed this interpleader action against the parties citing confusion as to the rightful owner of lease payments for software equipment. (See Docket No. 1.) OAT deposited the disputed payment with the Clerk of Court. (Id.)   On August 13, 2003, OAT filed an amended complaint. (See Docket No. 3.) Wilmington and CMI answered the Amended Complaint and filed a counterclaim against OAT for, *inter alia*, breach of contract and wrongful deposit. (See Docket Nos. 6 & 7.) On October 29, 2003, OAT answered Wilmington and CMI's counterclaim. (See Docket No. 11.) On November 21, 2003, Lehigh and Strong filed their answer to the Amended Complaint, as well as, their counterclaims against OAT for breach of contract and negligence. (See Docket No. 14.) On December 10, 2003, OAT answered Lehigh and Strong's counterclaim. (See Docket No. 16.) OAT subsequently deposited the final payment under the lease with the court. (See Docket No. 57.)

On July 19, 2005, OAT filed a motion for partial summary judgment with accompanying statement of uncontested facts. (See Docket Nos. 115, 116.) Wilmington/CMI opposed the motion and submitted its statement of uncontested facts. (See Docket Nos. 138, 139.) Lehigh/Strong also opposed the motion and submitted its statement of uncontested facts. (See Docket Nos. 147, 150.) OAT subsequently filed a reply to which Lehigh/Strong sur-replied. (See Docket Nos. 170, 190.)

### *A.    Undisputed Facts*

In 1998, OAT began the planning and implementation of the ANSFI project. (See Docket No. 105, ¶ 6.) The project was intended to upgrade OAT's fiscal computer systems to comply with the "Y2K" phenomenon and beyond. (Id.) In December 1998, OAT executed a Government Lease Purchase and Option Agreement ("the OAT lease") for the lease of fiscal software, in order to help carry out the first phase of the ANSFI project. (Id. at ¶¶ 1, 5; see also Docket No. 116, ¶ 1.) AA Public was chosen to provide financing for the project. (See Docket No. 105 at ¶ 7.)

**Civil No. 03-1772 (JAG)** 3

The original parties to the lease were AA Public, as "lessor," and OAT, as "lessee." (Id. at ¶ 2.) The lease was signed by OAT representative Rafael Cruz Garay ("Cruz") and AA Public President Alvin Aguirre ("Aguirre"). (Id. at ¶¶ 3- 4.) The lease contract, totaling $3,056,577.00, was set at a yearly interest rate of 6.75% and provided for repayment to begin on July 15, 2000 and continue in five (5) consecutive installments through July 15, 2004. (Id. at ¶¶ 5, 9-10, 12.) Payment for the first four (4) years (2000 through 2003) were for the stipulated amount of $771,449.12. (Id. at ¶ 10.) The last installment was stipulated at a lesser amount of $771,438.98. (Id. at ¶ 11.)

The lease contract was given two distinct identifiers: AF99-198 – given by OAT and MPR-980183 – given by AA Public. (See Docket No. 143, ¶ 14.) The original lease retained by OAT and registered in the Comptroller's Office contains both identifiers. (See Docket No. 116, ¶ 3; see also Docket No. 105, ¶ 14.) Aware that AA Public customarily assigned leases to third-party assignees, OAT and AA Public signed more than one original lease in December 1998. (See Docket No. 105, ¶¶ 17-18, 23.) One copy was kept by OAT and at least one other copy was given to Aguirre for subsequent negotiation with investors and assignees. (Id. at ¶ 19; see also Docket No. 116, ¶ 2.) The exact number of signed copies is disputed by Wilmington/CMI and Lehigh/Strong.

OAT never made any payments under the lease to Lehigh or any of the other counterclaimants. (See Docket No. 116, ¶ 6.) The first three (3) payments under the lease were made to AA Public. (Id.) Neither Lehigh/Strong nor Wilmington/CMI complained to OAT of non-payment prior to 2003. (Id. at ¶ 7.)

During 2001, after the second scheduled payment had been made, AA Public informed OAT that it had assigned the lease to J.P. Morgan. (Id. at ¶ 8.) On October 1, 2001, OAT requested AA Public to submit evidence of the alleged reassignment fo the lease to J.P. Morgan. (Id. at ¶ 9.) No evidence was ever submitted. (Id.) On or about March/April 2002, a Santander Bank representative contacted OAT's Finance department regarding the alleged assignment of the lease. (Id. at ¶ 10.) The Santander representative indicated that all payments due under the lease had to be directed to Santander because the lease had been assigned to J.P. Morgan and Santander was J.P. Morgan's representative. (Id.) Santander supplied OAT with a copy of the lease agreement in their possession signed by a "Josue Rodriguez" on behalf of OAT. (Id.)

**Civil No. 03-1772 (JAG)**                                    4

On April 11, 2002, OAT sent a letter to AA Public President Aguirre notifying him of the Bank's request and the discrepancies discovered. (Id. at ¶ 11.) At that time, OAT informed Aguirre that the name "Josue Rodriguez" appeared on the lease and that there was no OAT employee by that name, nor was he a representative or officer of the agency. (Id.) OAT requested a meeting with Aguirre to clarify matters. (Id.) On April 29, 2002, Aguirre sent OAT a letter stating that AA Public was in conversations with all affected parties in order to provide an explanation on the matters. (Id. at ¶ 12.)

On June 7, 2002, OAT sent Aguirre a follow-up letter. (Id. at ¶ 13.) The letter expressly stated that OAT did not have any knowledge or notice of any assignment to J.P. Morgan. (Id.) On June 24, 2002, Aguirre sent OAT a an "Assignment and Security Agreement" between AA Public and J.P. Morgan by which J.P. Morgan was assigned all right to the lease. (Id. at ¶ 14.) Aguirre informed OAT, through letter, that the discrepancies regarding signatures found on the documents were due to clerical errors and were being corrected. (Id.) Aguirre then instructed OAT to send the July 15, 2002 payment directly to him as had been done with the previous two payments. (Id.)

It is undisputed and records from the Puerto Rico State Department show that on January 22, 2002, AA Public underwent a corporate fusion on and merged with Cross Border Leasing ("Cross"). (See Docket No. 105, ¶ 39.) The subsisting or surviving company was Cross and not AA Public. (Id.)

### B.     Disputed Facts[1]

The number of originals signed is disputed. (See Docket No. 116, ¶ 2.) OAT contends that the number is two, as does Wilmington/CMI. However, Lehigh/Strong cites the testimony of OAT employee Cruz who stated that "at least" two originals were signed. (See Docket No. 150, ¶ 2.)

There is also a dispute regarding notice of assignment. OAT contends that neither Wilmington/CMI nor Lehigh/Strong ever notified the agency of any assignment of the lease or redirection of payment before 2003. (See Docket No. 116, ¶ 4.) Wilmington/CMI asserts that it notified OAT in March and June 2003, and could not have notified OAT sooner given that it did not

---

[1] The dispute of facts present are not material for purposes of ruling on this motion.

**Civil No. 03-1772 (JAG)**                                             5

received its assignment until August and then again in December 2002. (See Docket No. 139, ¶ 4.) Lehigh/Strong also contends that Lehigh President, Robert Kalb ("Kalb"), notified OAT via letter of its assignment in June 2000. (See Docket No. 150, ¶ 4.)

Finally, OAT claims that it attempted to determine the legitimacy of several claims demanding entitlement to payment under the lease. (See Docket No. 116, ¶ 16.) However, given that the demands came on the same day, June 12, 2003, only one month before the payment due date, and that the lease agreements submitted to their office were almost identical, OAT deposited the payment with the court and filed the present interpleader action. (Id.) Wilmington/CMI denied this assertion fully claiming that it notified OAT of assignment on March 25, 2003 and again on June 12, 2003. (See Docket No. 139, ¶ 16.) Wilmington further contends that Lehigh/Strong did not notify OAT until June 13, 2003. (Id.) Lehigh/Strong make the same assertions as Wilmington/CMI and add that Wilmington/CMI's initial notice was returned because there was no Wilmington signature and because the document contained a different assignor, namely Cross and not AA Public. (See Docket No. 150, ¶ 16.)

Finally, there is a dispute as to several blank spaces left in the original version of the lease. OAT contends that even thought several blank space do appear in their version of the lease, the spaces correspond exclusively to dates and not signatures of terms and conditions of the contract. (See Docket No. 116, ¶ 22.) Wilmington/CMI and Lehigh/Strong strongly dispute this assertion. The parties point out that the lease had seventy (70) blank spaces throughout the entire document and that not all of the spaces correspond exclusively to dates. (See Docket No. 150, ¶ 22.) Further, the parties point that the notary blocks were left blank as well. (Id.; Docket No. 139, ¶ 22.)

**III.    Legal Analysis**

Several claims have been raised against OAT, including breach of contract in commencing this interpleader action and depositing the payments with the court; negligent administration and supervision of the assignment of the lease; negligence in leaving blank marks on the original lease thus facilitating alterations on the lease; and contributory negligence through an agency theory.

An interpleader is a device which was developed to protect a party against being "caught in the middle." Equitable Life Assur. Soc. of the U.S. v. Porter-Englehart, 867 F.2d 79, 89 (1st Cir.

**Civil No. 03-1772 (JAG)**                                          6

1989). A stakeholder – one rightfully in possession of property – confronted with two or more competitors demanding that property, ought not be forced to evaluate the opposing claims at its peril. Id. There is no doubt that this OAT has found itself in this position.

There is no dispute that both Lehigh/Strong and Wilmington/CMI seek entitlement of the payments deposited with the court. Further, there is no dispute that both Wilmington/CMI and Lehigh/Strong notified OAT of their assignment of the lease in question, nor that both sought redirection of the last two payments under the lease. What is disputed is who has a valid instrument amid alleged allegations, and who has a valid claim to the lease through assignment. To impute a breach of contract claim against OAT would be essentially finding that a contract exists between one or both of them and OAT. This is clearly out of the court's province and clearly contrary to the nature of an interpleader action. There is nothing in the record to suggest that OAT has merely used this mechanism in order to wash its hands out of convenience. Clearly this case, amid allegations of alterations in contracts and fraud, justifies OAT's resort to interpleader. See id. at 84.

Similarly, any negligence claim against OAT is unfounded. Under Puerto Rico law, a *prima facie* case of negligence requires four elements: 1) an act or omission, 2) constituting a "fault or negligence," 3) damages, and 4) a causal connection between the conduct and damages. PR Laws Ann. tit. 31, § 5141. The record in this case is void of the existence of a contractual relationship that would give rise to liability. None of the disputed facts presented are material to this issue. Again, the facts in this case all revolve around the main issue – who has a valid contract and who legally acquired rights to the contract. Thus, the court recommends that partial summary judgment on the Wilmington/CMI and Lehigh/Strong's counterclaims be entered on behalf of OAT.

**IV.   Conclusion**

For the aforementioned reasons, the court **RECOMMENDS** that OAT's motion for partial summary judgment be **GRANTED**. (Docket No. 115).

Under the provisions of 28 U.S.C. § 636(b)(1)(B) and (c) and Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection with the Clerk of Court within ten (10) days of being served with a copy thereof. The written objections must specifically identify the portion of the report and recommendation to which

**Civil No. 03-1772 (JAG)**                              7

objection is made and the basis for such objection. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111(1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

**SO RECOMMENDED**.

In San Juan, Puerto Rico this 7th day of March 2006.

*S/ Gustavo A. Gelpi*
GUSTAVO A. GELPI
United States Magistrate-Judge